## Thomas S. Bigelow, Appellant, *v.* The City of Pittsburg.

*Road law—Damages—Charge of jury.*

Where a street is opened through a tract of land in a city, and it appears that if the land were laid out in lots fronting on the new street the owner would be benefited rather than injured by the taking, and it also appears that there are buildings on the land parallel with the new street, but the owner contends that the lots would be more valuable if they were laid out so as to front on a street at right angles to the new street, and that therefore he should be paid for the land taken, it is not error for the court to charge that if the jury adopt the owner's theory they should not allow, as an additional element of damages, the destruction or cost of removal of the buildings.

*Road law—Evidence—Bond.*

On the trial of an appeal from the report of a road jury, a bond with a plan attached, given by the city to the plaintiff to secure the payment of such damages as he might sustain from the opening of the street through his property, is not admissible in evidence.

Argued Nov. 9, 1898. Appeal, No. 158, Oct. T., 1898, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1896, No. 210, on verdict for defendant. Before GREEN, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from report of road jury. Before McCLUNG, J.

At the trial it appeared that Euclid avenue, in the city of Pittsburg, had been opened through plaintiff's land. There were buildings on the land parallel with the new street. The land extended along Jackson street from St. Clair street to Highland avenue, but had not been laid out in lots. The following plans show, first, the lots laid out so as to front on Jackson street and, second, the lots laid out so as to front on Euclid avenue.

The plaintiff offered in evidence the bond of the city of Pittsburg to the plaintiff in the sum of $7,500, conditioned for the payment of damages for the opening of Euclid avenue, "after the same shall have been assessed in the manner provided for by law."

The bond had a plan of the land attached.

Mr. Thomson, of counsel, for plaintiff: We want to show the time of the taking. The city will doubtless admit, also, that the plan attached to the bond by the city shows Jackson

street as fifty feet wide from Highland avenue to St. Clair street.

By the Court: The bond has nothing to do with that.

Mr. Thomson: I offer this plan, attached to the bond by the city of Pittsburg, showing the property that is taken. It is for the purpose also of showing that the city regarded Jackson street as an open street.

By the Court: The party that gave that bond had no control over the streets, and could not bind councils.

Mr. Thompson: Well, we will offer it in evidence.

Mr. Gray, of counsel, for defendant: We object to it as being incompetent and irrelevant.

By the Court: Objection sustained and bill sealed for plaintiff. [2]

The court charged in part as follows:

Admittedly there is more frontage with Euclid avenue through there than without it, so that if the frontage on Euclid avenue is as valuable as the frontage on Jackson street, then Mr. Bigelow is benefited instead of damaged. That is a proposition that cannot be disputed. As a matter of course when the frontage is increased the depth must be decreased. There is just the same amount of ground there, and there cannot be more frontage, and at the same time more depth or the same depth; you decrease the depth. But taking the lots as they are, if the frontage on Euclid avenue is as great as the frontage on Jackson street, then, necessarily, there is no damage. If the frontage on Jackson street is not enough more valuable than the frontage on Euclid avenue to overcome the additional frontage on Euclid, then still he would not be damaged. I am leaving out of view, for the present, the question of the greenhouse. So that you have this means of determining whether or not there is a benefit or a disadvantage, and it affords, perhaps, a pretty good test. You will notice a wide difference in the testimony of the various witnesses. I think most of the witnesses for the plaintiff make the frontage upon Jackson street about $30.00 a foot more valuable than that on Euclid avenue. The witnesses for the defendant make the frontage on Euclid avenue $20.00 more than the frontage on Jackson street, or, at least, more; some of them, perhaps, make a difference of only $10.00.

But, as I have said, if the frontage on Euclid avenue was not more valuable, or even if it was a little less valuable, there still might be no damage here. So that you can first determine that question. If you conclude that the frontage on Euclid avenue is as valuable as the frontage on Jackson street, then your task will probably be done. If you conclude, however, that the frontage on Jackson street is worth more, or enough more to overcome the difference in amount, then you will figure as to the question of damages, and as to the amount that you will give the plaintiff. And when you come to that, you have also an additional claim for this greenhouse, which you will take into account, for although there was a plan which was approved by the city, it was not an adoption of the street which would debar a party from claiming damages for an improvement that he had put upon the street.

[There is a matter, however, with regard to that greenhouse to which I should call your attention. When a party claims damages against the city and claims them upon a theory with respect to the laying out of his property, then of course fairness to the city requires that he should carry the same theory throughout his case. Now, the theory upon which he claims that this property was damaged is that the lots should front towards the south and not towards the east and west. That is, that the lots should front on Jackson street and not on Euclid avenue. Jackson street runs approximately east and west, I believe, and Euclid avenue north and south. That would seem to involve the abandonment of the present improvements on the lot. He is saying that the market value of that property at the time this street was opened was highest by taking a front upon Jackson street. If he takes a front on Jackson street, can he preserve either his house or his greenhouse? Unquestionably it would seem that the house would have to go, or have to be changed or moved; and the greenhouse being an appurtenance to it, it would seem to me, though that is for you, that that would go to, and that the party buying that lot would, at most, give him the privilege of taking the greenhouse off, and would not pay him for it. The city ought only to be compelled to pay what an ordinary person purchasing that lot for that purpose would have to pay. If that is the case, then the only question would be the value of the lot taken, and that, again, would be reduced

by the amount, if any, that you find there was of benefit to the adjoining lots, to the corner, because you will recollect that the opening of Euclid avenue, if the Jackson street front is the more valuable, does not compel him to front on Euclid avenue. He can still run his lots along back, flanking on Euclid avenue, and it would seem to be conceded that that does not injure him, and the majority of the witnesses who spoke of that seemed to concede that there was some benefit.

Now, gentlemen, you will consider this whole matter. Determining the question of that frontage, I think will be the fairest way to start out with the case. Determine which is the more valuable frontage. That may settle the whole case, but if it does not then you will come to a determination of the question of how much damage was done to him by taking out that fifty feet of the more valuable front, recollecting always that the fair way, when you adopt a theory for part of the plaintiff's case, is to carry that theory clear through, and that it would be unfair to shift to another theory which would increase the damages.] [1.]

The plaintiff is bound to use his property to the greatest advantage after it is taken. The city is bound to act in good faith with respect to him, and I, perhaps, should say a word here with regard to Jackson street under these circumstances. Jackson street is not an open street, at least not the whole of it; his one half of it, so to speak, is not yet opened. It is located, and consequently the chances for its being opened there are increased, undoubtedly very greatly increased, and the city should, and undoubtedly will, act in good faith in the matter of opening the street, and will not repeal the ordinance for the sake of injuring, or for the sake, so to speak, of getting even with Mr. Bigelow. They will act, and buyers would assume that they will act in good faith, and hence there is more chance of a fifty-foot street there than if it had not been located, and you would be entitled in finding the question of that frontage to consider that chance of the street being opened. At the same time you must recollect—and one of the witnesses this morning testified that real estate dealers always take any uncertainty in account —that there is more uncertainty than if the street was actually opened, and it is a fact, too, that legally Mr. Bigelow could claim damages for that twenty-five feet front. I suppose the great block in his way when he would come to claiming damages

would be the claim that he makes in this case, which is utterly inconsistent with the damages which would be claimed there. But that is the status of that street; it is located, not opened, and it will probably be opened, and parties in estimating the value of the frontage would take into account that probability.

Verdict and judgment for plaintiff for $2,250. Plaintiff appealed.

*Errors assigned* were (1) above instruction, quoting it; (2) rulings on evidence, quoting the bill of exceptions.

*D. T. Watson*, with him *W. W. Thomson* and *J. J. Miller*, for appellant.

*James C. Gray*, with him *Clarence Burleigh*, for appellee.

PER CURIAM, January 3, 1899:

We cannot discover any error in the charge of the learned court below. Both aspects of the frontage question were carefully explained and submitted to the jury. The whole subject was for them, as well as the assessment of damages, and these matters were carefully left to the jury by the court. The jury evidently found that the opening of Euclid avenue increased the value of the whole property, and to an extent sufficient to compensate the plaintiff for the cost of removing the greenhouse and the land taken. There was abundant testimony to warrant them in finding a large increase in the value of the whole property. The bond given by the city was properly rejected. It had no relevancy to the issue.

Judgment affirmed.